IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MICHAEL C. WILLIAMS
       Plaintiff,

vs.                               Case No. 3:12cv179/LAC/EMT

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]
       Defendant.
_____/

## ORDER and REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq.*  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.      PROCEDURAL HISTORY

On February 14, 2007, Plaintiff filed applications for DIB and SSI, and in both applications he alleged disability beginning March 5, 2002, although he later amended the alleged onset date to

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Fed. R. Civ. P. 25(d), she is therefore automatically substituted for Michael J. Astrue as the Defendant in this case.

March 22, 2006 (tr. 13, 64–65, 111; doc. 9 at 2).[2]  His applications were denied initially and on reconsideration, and thereafter he requested a hearing before an administrative law judge ("ALJ"). A hearing was held before ALJ Hallie E. Larsen in April 2009, and she subsequently issued a decision denying Plaintiff's claims (tr. 111–21).  Plaintiff sought review by the Appeals Council ("AC") of ALJ Larsen's decision, and the AC remanded the case back to the ALJ for additional proceedings (tr. 122–24).  In pertinent part, the AC directed the ALJ to adequately evaluate the January 2008 opinions of George A. Smith, M.D., a treating physician, and to obtain supplemental testimony from a vocational expert, if warranted (*see* tr. 123–24).

On March 29, 2010, a supplemental hearing was conducted by a different ALJ, Ronald Reeves, and on April 22, 2010, he issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision (tr. 13–24).  On February 17, 2012, the AC denied Plaintiff's request for review (tr. 1).  Thus, the decision of ALJ Reeves stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).  This appeal followed.

II.    FINDINGS OF THE ALJ

In his written decision, ALJ Reeves made several findings relative to the issues raised in this appeal (tr. 13–24):

1)    Plaintiff meets the insured status requirements of Act through June 30, 2007.[3]

2)    Plaintiff has not engaged in substantial gainful activity since the alleged onset date.

3)    Plaintiff has the following severe impairments:  lumbar degenerative disc disease status post surgeries in 1989 and 1991, left shoulder pain, and hypertension.

---

[2] All references to "tr." refer to the transcript of Social Security Administration record filed on June 27, 2012 (doc. 7).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

[3] Thus, the time frame relevant to Plaintiff's claim for DIB is March 22, 2006 (alleged onset), through June 30, 2007 (date last insured).  The time frame relevant to his claim for SSI is February 14, 2007 (date he applied for SSI) through April 22, 2010 (date of ALJ's decision).  See Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which he is both disabled and has an SSI application on file).  Accordingly, the general time frame relevant to this appeal is approximately March 2006 through April 2010.

4)	Plaintiff has no impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5)	Plaintiff has the residual functional capacity ("RFC") to perform medium work with "no more than mild" mental limitations and certain physical limitations.

6)	Plaintiff can perform his past relevant work as a driver messenger guard, assembler, cabinet assembler, and automobile detailer, as this work does not require the performance of work-related activities precluded by his RFC; therefore, Plaintiff has not been under a disability, as defined in the Act, from the alleged onset date, through the date of the ALJ's decision.

III.	STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her/his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g),[4] the Commissioner analyzes a disability claim in five steps:

1.  If the claimant is performing substantial gainful activity, he is not disabled.

2.  If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.  If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.  If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5.  Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his RFC and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. <u>MacGregor v. Bowen</u>,

---

[4] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, hereinafter, citations in this Report should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    RELEVANT PERSONAL, MEDICAL, AND VOCATIONAL HISTORY

    A.    Personal History

Plaintiff was born on January 14, 1961, and has a high school education (tr. 106).  At his hearing before ALJ Reeves, he testified he has not worked since March of 2002, primarily due to pain but also due to an inability to stay focused (tr. 34).  He stated he cannot afford a "regular doctor" but was obtaining treatment through a county clinic approximately once every three months (tr. 35).  Plaintiff testified he previously received physical therapy, massage therapy, biofeedback therapy and chiropractic care, and that he "would love to be able to do that [again]," but he could not afford such therapies and thus was treating his condition—which he described as arthritis in his back—with medications only (*id.*).  He stated he suffers from constant lower back pain but that rest, medications, and/or hot showers ease the pain (tr. 37).  He also has stiff knees and difficulty bending as a result, although he receives no treatment for his knees (tr. 38).

Plaintiff testified that on a typical day he stays home and lounges around the house, watches television, and/or uses the computer, unless he needs to go out to shop or pay a bill (tr. 35).  He estimated he lies down a total of about three hours a day (tr. 37).  Plaintiff stated he lives alone and is able to take care of his basic personal needs, such as bathing, shaving, preparing meals, cleaning, sweeping, shopping, and doing laundry (tr. 36).  Plaintiff is also able to drive short distances and attend three-hour church services (tr. 36–37).

    B.    Relevant Medical History — Physical

Plaintiff began seeing George A. Smith, M.D., with the Escambia County Community Clinic in October 2003, and he continued seeing him through early 2010 (*see* tr. 19, 20).  Dr. Smith treated Plaintiff for a variety of ailments, including hypertension and degenerative disc disease ("DDD") of the lumbar spine and associated back pain (tr. 19, 453).  In October 2005, Dr. Smith noted that Plaintiff had no spine swelling, no pain, no deformities, and full range of motion ("ROM") (tr. 339).  He also noted that a lumbar spine x-ray revealed only minimal degenerative changes (*id.*).

On June 13, 2007, Plaintiff was examined by Michael E. Kasabian, D.O., in connection with his claim for disability benefits (tr. 348).  Dr. Kasabian's physical examination revealed full and normal ranges of motion ("ROM") in seventy of seventy-four areas tested, including the cervical spine, hips, knees, elbows, and ankles (*see* tr. 456–58).  The only abnormalities observed were some tenderness, spasm, and reduced ROM in the lumbar spine (forward flexion was at 60/90°, extension was at 15/25°, and lateral flexion was at 15/25° on the right and left) (tr. 348, 351–53).  Muscle strength was full and sensation was intact in all four extremities, and Plaintiff could stand on his heels and toes and ambulate without difficulty or an assistive device (tr. 348).

On January 28, 2008, Dr. Smith completed a "Clinical Assessment of Pain" form ("CAP") (tr. 411–12).  There are four questions on the CAP.  The first three questions are answered by selecting one of four, pre-printed answers (A, B, C, or D, which answers reflect increasing levels of pain or medication side effects, with "A" being the least severe and "D" being the most severe), and the fourth question is answered merely by selecting "yes or no."  In response to each of the first three questions, Dr. Smith selected option "C," and thus opined as follows:  (1) Plaintiff's pain "is present to such an extent as to be distracting to adequate performance of daily activities or work"; (2) physical activity, such as walking, standing, bending, stooping or moving extremities, will "greatly increase pain and to such a degree as to cause distraction from task or total abandonment of task"; and (3) medication side effects "can be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc. . . . ." (*id.*).  In response to the fourth question, which asks whether Plaintiff has "an underlying medical condition consistent with the pain he . . . experiences," Dr. Smith selected "yes" (tr. 412).  Dr. Smith also completed a physical capacities evaluation form ("PCE").  On this form, Dr. Smith indicated that Plaintiff can stand or walk less than one hour at a time and no more than one hour, total, in an eight-hour workday; sit less than one hour at a time and no more than four hours, total, in a workday; occasionally lift or carry up to ten pounds; use his hands or legs for repetitive actions such as grasping, performing fine manipulation, and pushing or pulling arm and leg controls; and occasionally bend, squat, crawl, climb, and reach (tr. 413).  Dr. Smith also indicated on the PCE that Plaintiff has moderate restrictions with regard to driving and that Plaintiff should avoid unprotected heights and machinery (*id.*).  In the narrative section of the

PCE, Dr. Smith wrote as follows:  "Due to pain [Plaintiff] should recline at least two hours in a normal work day period." (*id.*).

On November 17, 2009, Dr. Smith completed another CAP and PCE.  This CAP included only the first and third "A, B, C, or D" questions and did not include the fourth, "yes or no" question (tr. 452).  Dr. Smith answered the first question as he had before, thereby indicating that Plaintiff's pain is present to such an extent as to be distracting to adequate performance work activities, but in response to the question regarding medication side effects, Dr. Smith selected option "B," thereby indicating that medication side effects were less severe than before.  More specifically, Dr. Smith indicated that Plaintiff's medications "can cause side effects which impose some limitations . . . but not to such a degree as to create serious problems in most instances" (*id.*).  The second PCE is identical to the one previously completed by Dr. Smith, with one exception, that is, Dr. Smith indicated that Plaintiff cannot use his legs for pushing or pulling leg controls (he previously stated Plaintiff can use his legs for such activities) (tr. 453).

On January 27, 2010, Plaintiff was again examined by Dr. Kasabian (tr. 454).  Dr. Kasabian first reviewed an x-ray of Plaintiff's lumbar spine, obtained in late October 2009, and noted that it revealed moderate DDD (*id.*).  He then conducted a physical examination, which resulted in similar results as before.  For example, ROM was again normal and full in seventy of seventy-four areas tested, including the cervical spine, hips, knees, elbows, and ankles (*see* tr. 456–58).  And Plaintiff again displayed tenderness and reduced ROM in the lumbar spine (forward flexion was at 80/90°, and lateral flexion was at 15/25°) (tr. 454, 456–58).  At this examination, however, tenderness and reduced ROM were also present in the left shoulder (forward elevation and abduction were at 110/115°) (*id.*).  Additionally, following the second examination Dr. Kasabian completed a PCE, which he did not do in connection with Plaintiff's first examination.  He opined on the PCE, in relevant part, that Plaintiff can lift or carry up to twenty pounds continuously, up to fifty pounds frequently, and up to 100 pounds occasionally; sit, stand or walk eight hours without interruption; use his right hand (his dominant hand) and both feet continuously and use his left hand occasionally; perform postural activities, including climbing, balancing, stooping, crouching and crawling, frequently, but kneeling only occasionally; and perform all usual daily activities, such as shopping, traveling, preparing meals, and caring for his personal hygiene (tr. 459–64).

C.     Relevant Medical History — Mental

Plaintiff underwent a consultative examination on June 7, 2007, which resulted in opinions by Steve Hirschorn, Ph.D., that although Plaintiff suffers from some depressive symptoms and related concentration and memory difficulties, he has no mental limitations that would preclude employment (*see* tr. 345–47).  Rather, Plaintiff's  primary obstacle to employment is his reported pain (tr. 347).

On June 19, 2007, Judith Meyers, Psy.D., a non-examining agency psychologist, assessed adjustment disorder with depressed mood and pain associated with psychological and physical factors, but she concluded that the impairments do not meet the criteria of Listing 12.04 (Affective Disorders) or 12.07 (Somatoform Disorders) (tr. 355–67).  In relevant part, Dr. Meyers found that Plaintiff has no restrictions in activities of daily living, mild difficulties in social functioning, and mild difficulties in maintaining concentration, persistence, or pace (tr. 365).  Thus, Dr. Meyers concluded, Plaintiff's impairments fail to satisfy the "paragraph B" criteria of the listings (*see id.*; tr. 367).  Dr. Meyers noted she had considered Dr. Hirschorn's report in reaching her conclusions (tr. 367).

In September 2007, Cheryl Woodson, Psy.D., a non-examining agency psychologist, opined that Plaintiff has non-severe mental impairments which result in, at most, only mild functional limitations (tr. 387–99).  Her opinions are essentially identical to those of Dr. Meyers, with one exception.  Dr. Woodson opined that Plaintiff has mild restrictions in activities of daily living (as opposed to none) (*see* tr. 397).

D.       Testimony of the Vocational Expert ("VE")

Jody Skinner, a VE, testified at Plaintiff's hearing before ALJ Reeves.  She identified and characterized Plaintiff's past relevant work as follows:  (1) driver messenger guard (medium, semi-skilled); (2) assembler (light, unskilled); (3) cabinet assembler (light, semi-skilled); and (4) automobile detailer (medium, unskilled) (tr. 38).  The ALJ then asked VE Skinner to consider a hypothetical individual of Plaintiff's age, with the same educational and work history as Plaintiff, with the physical limitations set forth by Dr. Kasabian on the January 2010 PCE, and who had only mild mental limitations (tr. 39).  When asked whether such a person can perform Plaintiff's past work, the VE responded that this hypothetical individual can perform all of Plaintiff's past relevant work (*id.*).  Continuing, the ALJ asked the VE to consider the same hypothetical individual, with

one modification, that is, that the individual can perform only medium work (as noted *supra*, Dr. Kasabian's PCE indicates that Plaintiff can lift and carry up to 100 pounds, which is beyond the fifty-pound limitation for medium work but within the limitations for heavy work (*see* 20 C.F.R. §§ 404.1567(c), (d))). The VE's response remained the same, that is, such an individual can perform all of Plaintiff's past relevant work (tr. 39–40). The ALJ next asked the VE to consider a third and fourth hypothetical individual with the limitations set forth by Dr. Smith on the CAPs and PCEs completed in November 2009 and January 2008, respectively (tr. 40) The VE opined that the third such individual can perform no work due to the limitation of working a total of only five hours per day,[5] and the fourth such person can perform no work due to "the exertion and limitations on sitting, standing, [and] walking," as well as the existence of "pain present to such an extent to be distracting to adequate performance [of work and causing] distraction from task or total abandonment of task" (tr. 40–41).[6]

V.      DISCUSSION

        Plaintiff raises two issues in this appeal. First, he contends the ALJ erred in rejecting the opinions of Dr. Smith, a treating physician (doc. 9 at 1, 5–14). Second, he contends the ALJ erred "in failing to pose a comprehensive hypothetical question to the [VE]" (*id.* at 1, 14–17).

        A.      The Opinions of Dr. Smith

        ALJ Reeves rejected the January 2008 and November 2009 opinions of Dr. Smith on the CAPs and PCEs (hereafter, collectively "Dr. Smith's opinions") (tr. 20). The ALJ generally found that Dr. Smith's opinions "depart[] substantially from the rest of the evidence of record," and in support of this finding the ALJ identified various parts of the record that conflict with Dr. Smith's opinions (*id.*). Plaintiff contends the ALJ erred in rejecting the opinions at issue, and he bases his argument, in part, on the fact that ALJ Reeves' conclusions differ from those of ALJ Larsen (e.g., ALJ Larsen determined that Plaintiff could perform less than the full range of sedentary work) (doc. 9 at 7–8). Plaintiff further contends that ALJ Reeves' reasons for "rejecting the opinions of Dr.

_____

        [5] Dr. Smith's January 2008 PCE contains a nearly identical restriction (*see* tr. 413).

        [6] Dr. Smith's November 2009 CAP and PCE contain similar restrictions (*see* tr. 452–53). It is thus evident that if Dr. Smith's January 2008 opinions <u>or</u> his November 2009 opinions are accepted as true, Plaintiff would be precluded from work.

Smith are inadequate" and, that after rejecting Dr. Smith's opinions, the ALJ erroneously relied on the opinions of Dr. Kasabian in determining Plaintiff's RFC (*id.* at 9, 11–13). The Commissioner contends the ALJ committed no error, and Plaintiff is not entitled to relief on this claim.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See* Lewis v. Callahan, 125 F.3d 1436, 1439-1441 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Sabo v. Chater, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240–41 (11th Cir. 2004) (citation omitted). Thus, an ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. But, if an ALJ elects "to disregard the opinion of a treating physician, the ALJ must clearly articulate [his] reasons" for doing so. *Id.* at 1241; *see also* Edwards, 937 F.2d 580 (finding that the ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements). However, if a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

Where substantial record evidence supports the ALJ's decision to discount a treating physician's opinion, the opinion of an examining physician itself becomes entitled to significant weight. *See* Richardson v. Perales, 402 U.S. 389, 91 (1971) (report of consultative examiner may constitute substantial evidence supportive of a finding adverse to a claimant); 20 C.F.R. § 404.1527 (every medical opinion should be evaluated, and unless a treating source's opinion is given controlling weight, the following factors are considered in deciding the weight to be given to any medical opinion: examining versus non-examining; treatment relationship, including length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship; supportability of the opinion(s); consistency with the record as a whole; specialization; and "other factors").

Initially, to the extent Plaintiff asserts error based on inconsistencies between the conclusions of ALJs Larsen and Reeves, Plaintiff is not entitled to relief. The AC remanded Plaintiff's case following ALJ Larsen's decision in part because the AC concluded that she failed to properly evaluate the opinions of Dr. Smith; the AC reached no such conclusion after reviewing ALJ Reeves' decision. Moreover, ALJ Larsen issued her decision on June 22, 2009, well before Dr. Kasabian examined Plaintiff in January 2010 and opined as to Plaintiff's physical capacities.[7] Thus, ALJ Larsen did not consider, and could not have considered, Dr. Kasabian's opinion (rendered after examining Plaintiff twice) that Plaintiff can perform work at the heavy range of exertion. Similarly, ALJ Larsen did not consider, and could not have considered, the testimony of Plaintiff or VE Skinner at the hearing in March 2010 or any other evidence that became part of the record after June 22, 2009, including additional treatment records from Dr. Smith (*see, e.g.*, tr. 465–67), some of which ALJ Reeves relied upon in reaching his conclusions (*see, e.g.*, tr. 20). Thus, ALJ Reeves' conclusions were based on a more comprehensive record, and the fact that they differ from ALJ Larsen's conclusions does not warrant relief here.

Plaintiff has also failed to establish entitlement to relief on the second aspect of this claim, namely, that ALJ Reeves provided "inadequate" reasons for rejecting Dr. Smith's opinions. In rejecting Dr. Smith's opinions, the ALJ first explained that the "extreme limitations" he assessed are not supported by any objective medical evidence of record (tr. 20). This finding is well supported by the record. As the ALJ noted, a lumbar spine x-ray from October 2005 revealed only minimal degenerative changes (tr. 19, 339), and an October 2009 lumbar spine x-ray revealed moderate DDD (tr. 454). While these x-rays may demonstrate some worsening of Plaintiff's lumbar condition over the course of four years, multiple physical examinations during the same time revealed that Plaintiff's physical capacities did not lessen. For example, Dr. Smith consistently observed that Plaintiff's gait and posture were normal, and his straight leg raising tests were negative (*see* tr. 335, 333, 331, 328 (March, June, September, and December 2006); tr. 325, 414, 416 (March, July, and October 2007); tr. 419–20, 421–22, 423–24, 425–26 (January, April, August, and December 2008), tr. 446–47, 470 (March and October 2009); tr. 467 (January 2010)). Dr. Smith

---

[7] Although Dr. Kasabian examined Plaintiff in June 2007, prior to ALJ Larsen's decision, he did not complete a PCE at that time or otherwise offer specific opinions as to Plaintiff's functional capacities.

also noted on numerous occasions that Plaintiff had no decreased ROM in his back, and/or no joint pain, joint redness, joint stiffness, joint swelling, muscle atrophy, muscle cramps, muscle pain, muscle weakness or swelling, although some tenderness was detected (tr. 414, 416 (2007); tr. 420, 422, 424, 426 (2008); tr. 447, 470 (2009); tr. 467 (2010)). Similarly, Dr. Kasabian's ROM testing in 2007 and 2009 revealed essentially the same results as to Plaintiff's back, although some problems evidently developed in Plaintiff's left shoulder between the testing. And, of course, Dr. Kasabian's opinions on the January 2010 PCE, which were rendered after Dr. Kasabian reviewed the October 2009 x-ray and examined Plaintiff a second time, reflect that Plaintiff had significant functional capacities. Dr. Kasabian's opinions further substantiate the conclusion that Plaintiff's abilities did not lessen over time. They also provide additional support for the ALJ's finding that the objective medical evidence, including the results of x-rays and physical examinations, are inconsistent with the extreme limitations assessed by Dr. Smith.

Continuing, the ALJ found that Dr. Smith's opinions are inconsistent with his own treatment records (tr. 20), which finding is also supported by the record. As summarized in the preceding paragraph, Dr. Smith observed no significant abnormalities over the long course of his treatment with Plaintiff. What is more, on the same day Dr. Smith opined, in part, that Plaintiff's pain is "present to such an extent as to be distracting to adequate performance of daily activities or work" (tr. 411, CAP dated 1/28/08), Plaintiff specifically reported to Dr. Smith that he felt "well" and had only "minor complaints" (tr. 419). Additionally, Dr. Smith made no indication in his treatment records that Plaintiff was disabled or restricted from work or other exertional activities, as would be expected if Plaintiff was truly as limited as Dr. Smith's opinions suggest. And, as the ALJ noted, Dr. Smith saw Plaintiff on an infrequent basis (approximately once every three months), he provided entirely conservative care, and he did not refer Plaintiff to a specialist (*see* tr. 20, 23). *See* Woodum v. Astrue, Case No. 8:07cv404, 2008 WL 759310, at *3 (M.D. Fla. March 20, 2008) (ALJ properly considered that "limited and conservative treatment . . . is inconsistent with the medical response that would be expected if the physician(s) found the symptoms and limitations to be as severe as reported by the claimant"); *see also* Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996) (ALJ may consider treatment that is "entirely conservative in nature" in discrediting a claimant's testimony); Miller v. Astrue, Case No. 8:07cv2074, 2009 WL 3516, at *5 (M.D. Fla. January 6, 2009) (same).

Furthermore, preprinted forms, such as those completed by Dr. Smith, do not provide persuasive evidence of the validity of the opinions expressed therein. *See, e.g.*, <u>Hammersley v. Astrue</u>, No. 5:08cv245-Oc-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions.") (citing <u>Spencer ex rel. Spencer v. Heckler</u>, 765 F.2d 1090, 1094 (11th Cir. 1985) (rejecting opinion from a non-examining physician who merely checked boxes on a form without providing any explanation for his conclusions); <u>Mason v. Shalala</u>, 994 F.2d 1058, 1065 (3d Cir. 1993) (noting that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.")). Stated another way, as the ALJ stated here, opinions on such forms are "merely conclusory" (tr. 20), and it is entirely proper for an ALJ to reject a treating physician's opinion on such a basis.

Next, the ALJ found that Plaintiff's daily activities are inconsistent with the opinions of Dr. Smith (*see* tr. 20), which finding is supported by Plaintiff's own testimony. And finally, the ALJ noted that Dr. Smith might have offered such extreme opinions out of sympathy for Plaintiff or to avoid any tension in his relationship with Plaintiff (*id.*). To the extent the ALJ's last statement is construed as another basis for discounting Dr. Smith's opinions (it does not appear to be; rather, it appears to be speculation made in an effort to understand or explain opinions that otherwise lack support in the record), the ALJ should not have considered Dr. Smith's possible motivations. Any error in doing so, however, is harmless. The ALJ's other reasons for discounting Dr. Smith's opinions are substantially supported by the record and alone justify discounting them.

Having properly discounted Dr. Smith's opinions, the ALJ committed no error in assigning "significant weight" to the opinions of Dr. Kasabian on the PCE and relying upon them, in part, to determine Plaintiff's RFC (ALJ Reeves did not fully adopt Dr. Kasabian's opinions, which include the opinion that Plaintiff can perform heavy work, because the RFC limits Plaintiff to medium work).[8] *See, e.g.*, <u>Richardson</u>, 402 U.S. at 91. For all these reasons, Plaintiff is not entitled to relief on this claim.

---

[8] The ALJ's physical RFC determination is consistent in all material respects with the opinions of Karen Kuhns, M.D., a non-examining agency physician who completed a PCE and found Plaintiff capable of performing medium work (*see* tr. 379–86). Thus, Dr. Kuhns' opinions provide additional support for the ALJ's findings.

B.      The ALJ's Hypothetical Questions

Plaintiff contends the ALJ erred in posing hypothetical questions to VE Skinner that included only *mild* mental limitations (doc. 9 at 14). In support, Plaintiff notes the ALJ found that he has *moderate* mental limitations in maintaining concentration, persistence and pace, and thus these moderate limitations should have been included in the hypothetical questions (*id.* at 14–15). Although Plaintiff presents this claim of error as one directed at the ALJ's hypothetical questions, it also appears to be a claim of error directed at the ALJ's RFC finding, as the RFC includes only "mild mental limitations," and the VE was asked to consider this RFC in rendering her opinions. Thus, the court will first consider whether the RFC is supported by the record.

Residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments. *See* Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). As stated in 20 C.F.R. § 404.1545(a), it is the most a claimant can still do despite his limitations. "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999) (at the fourth step a claimant must prove that he is unable to perform his past relevant work). Although the RFC determination is a medical question, it is not based only on "medical" evidence, that is, evidence from medical reports or sources; rather, an ALJ has the duty, at step four, to assess RFC on the basis of all the relevant, credible evidence of record. *See* Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004); McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations); Dykes v. Apfel, 223 F.3d 865, 866–67 (8th Cir. 2000) (per curiam) (RFC is a determination based upon all the record evidence, but the record must include some medical evidence that supports the RFC finding). *See also* 20 C.F.R. § 404.1545; Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (eff. July 2, 1996).

As can be seen from the summary of Plaintiff's medical history, *supr*a, Plaintiff received no treatment from a psychiatrist, psychologist, or any other mental health specialist during the time

frame relevant to this appeal (or at any other time for that matter (*see, e.g.*, tr. 399)).[9]  The record does, however, contain some evidence as to Plaintiff's mental health because—and only because—the Commissioner developed the record in this regard: (1) by obtaining opinions as to the severity of Plaintiff's mental impairments and any related functional limitations from two, non-examining agency specialists, Dr. Meyers and Dr. Woodson; and (2) by referring Plaintiff to Dr. Hirshcorn for a consultative evaluation and obtaining his opinions.  And the fully developed record substantially supports the ALJ's finding that Plaintiff has only *mild* mental limitations.

Dr. Meyers and Dr. Woodson each completed forms titled Psychiatric Review Technique ("PRT"), and they opined thereon that Plaintiff has no or—at most—mild mental limitations (*see* tr. 365, 397).  Dr. Hirshcorn did not complete a PRT or otherwise specifically assess Plaintiff's mental functional capacities or limitations.  Rather, he generally noted that Plaintiff suffers from some depressive symptoms and related concentration and memory difficulties but ultimately concluded that Plaintiff has no mental limitations that would preclude employment and that Plaintiff's primary obstacle to employment is his reported pain (tr. 347).  On this record, ALJ Reeves clearly did not err in determining Plaintiff's mental RFC.  Correspondingly, he did not err by relying on the VE's answers to hypothetical questions based on that RFC to conclude at step four that Plaintiff is not disabled.

While the discussion might end here, the court will nevertheless consider the other aspect of Plaintiff's argument, which is based on a finding made by the ALJ at step two.  More specifically, in rating the severity of Plaintiff's mental impairments the ALJ considered the "paragraph B" criteria of the section 12.00 listings, and in doing so found that Plaintiff has no restrictions in activities of daily living, mild restrictions in social functioning, and *moderate* limitations in maintaining concentration, persistence or pace (*see* tr. 17; *see also, e.g.*, Listings 12.04 and 12.07).  Thus, contends Plaintiff, the ALJ should have included the latter limitations in his hypothetical questions.

---

[9] Based on this lack of evidence alone, one might conclude that Plaintiff failed to meet his burden at step four, to prove he is unable to return to his past relevant work due to a mental condition.  Although Plaintiff testified that he experiences some difficulty staying focused, he emphasized he is primarily unable to work due to pain, and he presented no other evidence to substantiate the presence of a mental health impairment or mental limitations (tr. 34).

The undersigned agrees with the Commissioner (*see* doc. 10 at 20–25) and concludes that Plaintiff is not entitled to relief on this aspect of his claim.

Initially, ALJ Reeves did not identify the basis on which he found moderate limitations in concentration, persistence or pace, although his finding is presumably based on Dr. Hirshcorn's report (*see* tr. 17; *see also* doc. 9 at 14).  As previously noted, however, Dr. Hirschorn did not complete a PRT or otherwise specifically assess Plaintiff's abilities.  But Dr. Meyers and Dr. Woodson did, and they both specifically opined that Plaintiff has only *mild* limitations in maintaining concentration, persistence or pace.  Moreover, they both formed this specific opinion after reviewing Dr. Hirschorn's report.   For example, in discussing the broad category of "Difficulties in Maintaining Concentration, Persistence, or Pace," and in finding that Plaintiff has only mild difficulties in this area, Dr. Meyers specifically noted that Plaintiff—when evaluated by Dr. Hirschorn—was able to recall four out of four words after delay and "complete Serial 3s" with only one miscue (tr. 367; *see also* tr. 346).  She also noted Plaintiff's own statements, which reveal that he is able to take his medication and engage in personal hygiene without being reminded to do so, as well as manage financial matters, follow written and verbal instructions, read the bible, write music, and play the keyboard (tr. 367).  Dr. Woodson formed her opinion on similar bases (*see* tr. 399).  Thus, the undersigned has found no substantial evidence to support the ALJ's finding of moderate limitations at step two, and it appears that the ALJ merely gave Plaintiff "the benefit of the doubt" in assessing such limitations with regard to maintaining concentration, persistence, or pace.[10]

Additionally, the ALJ explained why he included no moderate limitations in the RFC at step four, even though he found moderate limitations at step two, as follows:

> The limitations identified in "paragraph B" criteria [i.e., restrictions in activities of daily living; social functioning; and concentration, persistence or pace] are <u>not</u> a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential

---

[10] To be sure, Plaintiff does not point to any evidence in the record to support a finding of moderate limitations; rather, his argument is based solely on the ALJ's finding at step two (*see* doc. 9 at 14–17).  Moreover, Plaintiff does not contest the ALJ's ultimate findings at step two, namely, that Plaintiff has severe physical impairments but no severe mental impairment (*see* doc. 9).

> evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders included in section 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment [i.e., no more than mild mental limitations] reflects the degree of limitation [ALJ Reeves] has found in the . . . mental function analysis [i.e., the more-detailed analysis regarding Plaintiff's ability to understand, remember and carry out instructions, and respond appropriately to supervision, co-workers, and work pressures in a work setting (*see* 20 C.F.R. § 404.1545(c))].

(tr. 17–18) (emphasis added). As the ALJ correctly noted, the RFC assessment must include an assessment of a claimant's "work-related abilities on a function-by-function basis," including the various functions listed in 20 C.F.R. § 404.1545, as opposed to an assessment of only the broad categories that are considered in determining whether a mental impairment is severe. *See, e.g.,* SSR 96–8p (the paragraph B criteria are used to rate the severity of a mental impairment at step two, not to assess the RFC; the mental RFC assessment at step four requires a more detailed assessment of the "[w]ork-related mental activities generally required by competitive, remunerative work," including the ability to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting).

In Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1181 (11th Cir. 2011), the court explained "that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace [merely] by restricting the hypothetical question to simple, routine tasks or unskilled work." Instead, the hypothetical question must "include or otherwise implicitly account for all of [a claimant's] impairments" for the answer to it to constitute substantial evidence. *Id.* at 1181. Winschel, however, does not "stand for the proposition that an ALJ must intone the magic words concentration, persistence, and pace if the ALJ finds" at step two or three that a claimant has limitations in that broad functional area. Hines-Sharp v. Comm'r of Soc. Sec., No. 12-14042, 2013 WL 811968, at *2 (11th Cir. Mar. 6, 2013). An ALJ may, as the court noted in Winschel, "account implicitly for those limitations in other ways when crafting a hypothetical." *Id.* (citing Winschel, 631 F.3d at 1181). The court also recognized in Winschel "that the Commissioner's policy *requires* ALJs to be more detailed in evaluating a claimant's RFC at step four than in assessing the severity

of mental impairments at steps two and three." *Id.* (citing <u>Winschel</u>, 631 F.3d at 1180) (quoting <u>Ramirez v. Barnhart</u>, 372 F.3d 546, 554 (3d Cir. 2004)).

That is precisely what the ALJ did here. He recognized that the RFC assessment requires a more detailed assessment, and he included in the RFC only mild limitations, as found by Dr. Meyers and Dr. Woodson. Although the court in <u>Winschel</u> found that limitations to simple, routine tasks or to unskilled work would not, standing alone, typically be sufficient to account for a plaintiff's moderate limitations in concentration, persistence or pace, <u>Winschel</u>, 631 F.3d at 1180–81, in this case ALJ Reeves did not simply restrict the hypothetical individual to unskilled work. Instead, he included mild mental limitations in his hypothetical questions.

The Eleventh Circuit has more recently recognized that a hypothetical question can sufficiently account for a moderate limitation in concentration, persistence or pace by including a restriction to simple or routine tasks, <u>if</u> the medical evidence demonstrates—as it does here—that the claimant has the ability to perform those tasks despite concentration deficiencies. *See* <u>Jarrett v. Comm'r of Soc. Sec.</u>, 422 F. App'x. 869, 872 (11th Cir. 2011) (unpublished) (citing <u>Winschel</u>, 631 F.3d at 1181)[11]; <u>Washington v. Soc. Sec. Adm., Comm'r</u>, 503 F. App'x 881, 883–84 (11th Cir. 2013) (unpublished); <u>Smith v. Comm'r of Soc. Sec.</u>, 486 F. App'x 874, 876 (11th Cir. 2012) (unpublished) (also noting ALJ's acknowledgment that moderate limitations in concentration, persistence and pace were found at step two but not included in the RFC and finding no error where such limitations were "considered alongside the rest of the evidence"); <u>Scott v. Comm'r of Soc. Sec.</u>, 495 F. App'x 27, 29 (11th Cir. 2012) (unpublished) ("Because the medical evidence demonstrated that Scott could engage in simple, routine tasks <u>or unskilled work</u> despite moderate limitations in concentration, persistence, and pace, the ALJ sufficiently accounted for such impairments by limiting the hypothetical to include only unskilled work.") (emphasis added). *See also, e.g.*, <u>Simila v. Astrue</u>, 573 F.3d 503, 521–22 (7th Cir. 2009) ("[w]e have held that claimants who 'often experience[ ] deficiencies of concentration, persistence, or pace' are capable of performing semiskilled work, and those who are 'mildly to moderately limited in these areas,' are able to perform 'simple and repetitive light work'") (internal citations omitted); <u>Stubbs–Danielson v. Astrue</u>, 539 F.3d 1169,

---

[11] The undersigned recognizes that unpublished cases are not considered binding precedent, *see* 11th Cir. R. 36-2, and discusses them only as persuasive authority.

1173–76 (9th Cir. 2008) (when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence and pace, limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations); Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001) (same).  Thus, assuming for the sake of argument only that the concentration, persistence or pace restriction should have been included in the ALJ's hypothetical question, the court concludes that the ALJ's ultimate conclusion would have remained the same because Plaintiff's past work—to which the ALJ found he can return—was performed at the unskilled level (assembler and automobile detailer) or semi-skilled level (driver messenger guard and cabinet assembler).  Accordingly, to the extent Plaintiff is limited to unskilled work, any deficits in concentration, persistence or pace are adequately accounted for.  And to the extent Plaintiff is limited to semi-skilled work, the same deficits are also likely accounted for, but if they are not any error is harmless because Plaintiff can perform two past jobs that are unskilled.

Furthermore, the testimony of VE Skinner was not even required at step four.  *See* Lucas v. Sullivan, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990); *but see* SSR 82-61 (recognizing that a VE may be appropriate at step four).  Thus, the ALJ could have found Plaintiff capable of returning to his past relevant work without posing any hypothetical questions to a VE, so VE Skinner's testimony in this case merely provides additional evidence in support of the ALJ's finding that Plaintiff is not disabled.  *Cf.* Winschel, 631 F.3d at 1179–81 (finding error in the Commissioner's determination at step five that significant numbers of jobs exist in the national economy that Winschel could perform, and noting that an ALJ must obtain the testimony of a VE at step five (or apply the Medical Vocational Guidelines)).

Finally, Plaintiff was represented by counsel at his hearing before ALJ Reeves, and counsel failed to ask the VE whether Plaintiff's ability to perform his past work would be compromised by limitations in maintaining concentration, persistence or pace, or any other mental limitations (*see* tr. 40–41).  Additionally, counsel's questions directed to Plaintiff concerned only his back pain, knee pain, daily activities, and that fact that Plaintiff was then under Dr. Smith's care (tr. 37–38).  Thus, Plaintiff's counsel failed to bring to the ALJ's attention any indication that Plaintiff's mental limitations might interfere with his ability to work.  *See* Denomme v. Comm'r, Soc. Sec. Admin., No. 12-14963, 2013 WL 2097364, at *4 (11th Cir. May 16, 2013) (citing Allen v. Schweiker, 642

F.2d 799, 802 (5th Cir. 1981) (where a disability claimant is represented before the agency, her representative has the power to present supporting evidence and challenge the testimony of the VE)).

For all of these reasons, the undersigned finds that the ALJ properly determined Plaintiff's RFC and presented complete hypothetical questions to the VE and, further, that substantial evidence supports the ALJ's finding that Plaintiff can perform his past relevant work.

VI.    CONCLUSION

The ALJ did not err in discounting the opinions of Dr. Smith, in determining Plaintiff's RFC, in posing hypothetical questions to the VE, or in concluding that Plaintiff is not disabled at step four of the sequential evaluation.  Additionally, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.  Finally, the Commissioner's decision is supported by substantial evidence on the record as a whole and should not be disturbed, 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at1560.

Accordingly, it is **ORDERED**:

Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this action.

And it is respectfully **RECOMMENDED**:

That the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED**, and that the clerk be directed to close the file.

At Pensacola, Florida this 13th day of June 2013.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**